IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| ANGELICA HUAMAN PRADO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:26-cv-936 (LMB/WEF) |
| | ) | |
| PAUL PERRY, et al., | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER

Petitioner Angelica Huaman Prado ("Prado"), a native and citizen of Peru, has filed a

three-count Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241, in which

she asserts that she has been illegally detained by the U.S. Department of Homeland Security's

("DHS") Immigration and Customs Enforcement ("ICE") agency since February 27, 2026.

Specifically, she alleges that her characterization by DHS as an "applicant for admission"

pursuant to 8 U.S.C. § 1225(a), thus subjecting her to mandatory detention under 8 U.S.C.

§ 1225(b)(2), violates her due process rights (Count I), the Immigration and Nationality Act

(Count II), and the bond regulations (Count III).

Prado is currently detained at the Caroline Detention Facility, which is within the Court's

jurisdiction and the basis upon which she is suing Paul Perry, the warden of the Caroline

Detention Facility. Prado has also sued Robert Guadian, the Director of the ICE Enforcement

and Removal Operations Washington Field Office; Todd Lyons, the Acting Director of ICE;

Markwayne Mullin, the Secretary of Homeland Security; and Todd Blanche, the Acting Attorney

General (collectively, "the federal respondents"). For the reasons discussed in this Order, the

Court finds that Prado is detained pursuant to 8 U.S.C. § 1226(a) and that the process the federal

respondents used to revoke the order releasing Prado on her own recognizance violated the Fifth

Amendment. Accordingly, Prado's Petition will be granted as to Count I, and the federal respondents will be ordered to release her from custody immediately.

I.

Section 1226(a) governs the detention of certain noncitizens "already present in the United States" pending the outcome of removal proceedings. Jennings v. Rodriguez, 583 U.S. 281, 303 (2018). Although § 1226(a) permits the Attorney General to detain noncitizens during removal proceedings, "the [Immigration and Nationality] Act and the regulations adopted to implement its authority afford aliens three opportunities to seek release from detention" either on a monetary bond or on conditional parole.[1] Miranda v. Garland, 34 F.4th 338, 346 (4th Cir. 2022). The first opportunity is with an immigration officer, who is authorized to release a noncitizen on bond or conditional parole if she "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). "If an immigration officer denies bond, sets bond at an amount the alien believes is too high or sets alternative conditions to bond the alien contends are unreasonable, an alien may appeal the officer's bond determination to an immigration judge, giving the alien a second opportunity at release." Miranda, 34 F.4th at 346 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19(a), 1236.1(d)(1)). The "third opportunity comes if an alien is not satisfied with the immigration judge's decision," at which time the noncitizen "may appeal to the Board of Immigration Appeals ["BIA"] for another review." Id. at 346–47 (citing 8 C.F.R. §§ 236.1(d)(3), 1003.19(f), 1236.1(d)(3)). "At each step in this process, the government

---

[1] As the Fourth Circuit has stated, the Court occasionally uses the term "alien" because Congress has used the term in the text of the applicable statutes and regulations. The Court's "use of the term 'alien' is not intended to express any opinion, pejorative or otherwise, about the [petitioner] in this action or others challenging their detention under our immigration laws." Miranda v. Garland, 34 F.4th 338, 345 n.1 (4th Cir. 2022).

requires the [noncitizen] to prove that he or she is not a danger to the community or a flight risk." Id. at 347 (citing 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8)).

## II.

The following facts are undisputed. Prado entered the United States without inspection on or about May 5, 2023, and shortly thereafter, she was apprehended by ICE officers. [Dkt. No. 1] at ¶¶ 25–26. On June 15, 2023, she was issued a Notice to Appear, which charged her with being inadmissible to the United States. [Dkt. No. 1-2]. That same day, an ICE officer released Prado on an Order of Release on Recognizance, which stated: "You have been arrested and placed in removal proceedings. In accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance provided you comply with the [enumerated] conditions."[2] [Dkt. No. 4-1]. The conditions were as follows:

- Prado "must report for any hearing or interview as directed by the Immigration and Customs Enforcement or the Executive Office for Immigration Review."

- Prado "must surrender for removal from the United States if so ordered."

- Prado must "report in writing/person to Duty Officer at 14797 Murdock St Chantilly, VA 20151 on Tuesday 10/10/2023 at 0900 hrs."

- Prado "must not change your place of residence without first securing written permission from the officer listed above."

- Prado "must not violate any local, State, or Federal laws or ordinances."

- Prado "must assist the Immigration and Customs Enforcement in obtaining any necessary travel documents."

- Prado must "not associate with known gang members, criminal associates, or be associated with such activity."

---

[2] Section 236 of the Immigration and Nationality Act is codified at 8 U.S.C. § 1226.

- Prado must "not commit any crimes while on this Order of Release on Recognizance."

- Prado must "report to any parole or probation officer as required within 5 business days and provide the ICE with written verification of the officer's name, address, telephone number, and reporting requirements."

- Prado must "continue to follow any prescribed doctor's orders whether medical or psychological including taking prescribed medications."

Id. The Order of Release on Regonizance also advised Prado that her failure to comply with the enumerated conditions could result in the revocation of her release. Id. Since then, Prado has complied with all terms of her release and has not been charged or convicted of any crime. [Dkt. No. 1] at ¶ 28. Nonetheless, on February 27, 2026, ICE re-detained Prado, and she has since been detained at the Caroline Detention Facility. Id. ¶ 29.

Prado filed her Petition on April 6, 2026. [Dkt. No. 1]. The next day, the Court entered an Order directing the federal respondents to show cause "as to why the Court should not grant the Petition and order petitioner's immediate release." [Dkt. No. 2]. The federal respondents have filed a timely opposition. [Dkt. No. 4].

III.

The central question posed in this Petition is whether Prado's detention violates the Fifth Amendment. According to the federal respondents, Prado's detention is lawful because she is subject to mandatory detention under 8 U.S.C. § 1225(b). [Dkt. No. 4] at 1. According to Prado, her detention is unlawful because she is subject to discretionary detention under 8 U.S.C. § 1226(a).

As an initial matter, the federal respondents' position that Prado "is subject to mandatory detention under 8 U.S.C. § 1225(b)," [Dkt. No. 4] at 1, is indefensible. This Court has time and again held that § 1225(b) governs the detention of "aliens seeking admission into the country,"

4

not "aliens already in the country." Hasan v. Crawford, 800 F. Supp. 3d 641, 656 (E.D. Va. 2025) (quoting Jennings, 583 U.S. at 289). And the federal respondents' treatment of Prado unequivocally demonstrates that she is detained pursuant to § 1226(a). Specifically, the Order of Release on Recognizance explicitly cites § 236 of the Immigration and Nationality Act, [Dkt. No. 4-1], thus dispelling the argument that the federal respondents have detained Prado under § 1225(b)(2). See Hasan, 800 F. Supp. 3d at 655.

Moreover, the process the federal respondents used to revoke the order releasing Prado on her own recognizance violated the Fifth Amendment. See Mathews v. Eldridge, 424 U.S. 319, 335 (1976). First, Prado has a significant liberty interest in remaining out of custody. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). In the parole context, "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." Morrissey v. Brewer, 408 U.S. 471, 482 (1972). Subject to the conditions of parole, a parolee "is free to be with family and friends and to form the other enduring attachments of normal life." Id. Here, Prado, who has been living in the United States for nearly 32 months in full compliance with her release order, "has relied on at least an implicit promise that parole will be revoked only if [she] fails to live up to the parole conditions." Id. For these reasons, the federal respondents created a significant liberty interest for Prado "when they granted her release on her own recognizance." Arias Sierra v. Marrero, 2026 WL 851974, at *3 (S.D. Cal. Mar. 27, 2026).

Second, the procedures used to revoke Prado's parole significantly risked erroneously depriving her of her liberty interest in remaining out of custody. To have qualified for release on

recognizance, DHS had to have determined that Prado did not pose a safety or flight risk. Miranda, 34 F.4th at 347 (explaining that for an immigration officer to release a noncitizen, the noncitizen must "prove that he or she is not a danger to the community or a flight risk"). There is absolutely no evidence in the record that any DHS officer engaged in any individualized process to decide whether Prado violated any of the terms outlined in the order releasing her on her own recognizance. Therefore, on this record, it is easy to see how any additional procedure would be valuable where, as here, "the only procedure required for the deprivation of [petitioner's] liberty appears to be an unreviewable decision by an agency official subject to no formal procedures or review." L.M. v. Noem, 2026 WL 103231, at *13 (D. Nev. Jan. 14, 2026).

Third, the federal respondents have "no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by . . . alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017). Although the federal respondents have a "weighty" "interest in efficient administration of the immigration laws," Landon v. Plasencia, 459 U.S. 21, 34 (1982), they "remain subject to an obligation to 'effectuate [Prado's] detention in a manner that comports with due process,'" Abadin v. Noem, 2026 WL 217148, at *4 (W.D. Wash. Jan. 28, 2026) (citation omitted). Nothing in this record explains why the federal respondents are "unable to efficiently enforce the immigration laws . . . while also affording individuals with their 'core' due process right: 'notice and an opportunity to be heard.'" Make the Rd. N.Y. v. Noem, 2025 WL 2494908, at *19 (D.D.C. Aug. 29, 2025) (quoting LaChance v. Erickson, 522 U.S. 262, 266 (1998)).

In sum, a person at risk of suffering a serious loss must be given notice and a meaningful opportunity to be heard. Mathews, 424 U.S. at 335. Although the federal respondents have

discretion to release a noncitizen on her own recognizance, they cannot re-detain that noncitizen in a mere whim, which is what has happened in this case. Accordingly, Prado's continued detention violates the Due Process Clause, and she must be released from custody immediately.

IV.

For all these reasons, Prado's Petition, [Dkt. No. 1], is GRANTED as to Count I, and it is hereby

ORDERED that by 4:00 PM on April 15, 2026, the federal respondents release Prado from custody with all her personal property subject to the conditions enumerated in the June 15, 2023 Order of Release on Recognizance, [Dkt. No. 4-1]; and it is further

ORDERED that the federal respondents—along with their officers, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them—be and are ENJOINED from rearresting Prado unless (1) she commits a violation of any federal, state, or local law; (2) she fails to comply with the conditions enumerated on the Order of Release on Recognizance; or (3) the Order of Release on Recognizance has been lawfully revoked in a manner consistent with the Due Process Clause.

The Clerk is directed to enter judgment in Prado's favor pursuant to Federal Rule of Civil Procedure 58, forward a copy of this Order to counsel of record, and close this civil action.

Entered this 14 day of April, 2026.

Alexandria, Virginia

/s/

Leonic M. Brinkema
United States District Judge